Good morning, Your Honors, and may it please the Court. I am James Coleman, Counsel of Record for the Appellant. I am here to introduce the Court to Andrew Barr, a third-year student at Duke Law School who will argue on Mr. McNeill's behalf under Rule 46A of the Rules of this Court. Andrew Barr Thank you, Professor Coleman. Mr. Barr, welcome to the Court. Andrew Barr Thank you, Your Honor. Andrew Barr You may proceed. Andrew Barr May it please the Court. Good morning, Your Honors. As Professor Coleman mentioned, my name is Andrew Barr and I am counsel for Mr. Marcus Antonio McNeill, a pro se litigant housed in Terre Haute Penitentiary. Andrew Barr Your Honors, as a preliminary matter for the purposes of this appeal, it has been established that Mr. McNeill deposited his habeas condition affixed with proper postage in Terre Haute Penitentiary's mailroom on May 23, 2011, twenty-nine days before his statute of limitations ran. Judge Coleman But it hasn't been established where exactly that piece of correspondence was addressed to, is that right? Andrew Barr That's correct, Judge, it's unknown exactly what happened to his motion after he deposited it. Judge Coleman Well, not only that, but we don't know whether or not he properly addressed it to the district court in Terre Haute, do we? Andrew Barr Well, Judge Giaz, we do know that he used the appropriate address for the Southern District of Indiana. The issue is that he should have sent it to the Eastern District of North Carolina, but because of the operation of the prison mailbox rule, as well as 28 U.S.C. 1631, the transfer statute, Mr. McNeill is entitled to benefit from the prison mailbox rule, notwithstanding that he used the Southern District of Indiana's address. Judge Coleman Well, but again, I'm not sure that we've established in this record that he properly addressed that piece of correspondence to the district court in Indiana. Andrew Barr Well, Judge Giaz, if you look at page 102 of the record, Mr. McNeill makes an affirmation pursuant to section 1746.2, saying that he did in fact use proper postage and the proper address to the Southern District of Indiana, and because of this court's holding in Nicholson, all facts must be viewed in the light most for the purposes of this appeal. So because Mr. McNeill, for this appeal, did send it to the Southern District of Indiana, but he should have sent it to the Eastern District of North Carolina, it is our contention that the prison mailbox rule does apply, notwithstanding that error, and the reason that is is because Mr. McNeill's motion was filed the moment he deposited it with prison authorities. Under the Supreme Court's holding in Houston v. Lack, the moment of filing for a pro se litigant's legal papers is the moment he deposits those papers with prison authorities. It is irrelevant what happens to those papers after that, because Mr. McNeill is a pro se litigant. He is confined, and he is unable to check up on the government actors that he is forced to rely on. So if those government actors . . . Judge Giaz Do you recall in the Houston v. Lack case where it is that a prisoner addressed that particular mailing? Well, in Houston v. Lack, they actually do not deal with Mr. Houston's mailing. In fact, the court even suggests that he mailed it to the state court as opposed to a district court. But because it did in fact get to that court, they did not deal with that, and instead they just talked about the issue of timing rather than the destination. Well, I'm thinking that might be of some significance. If the issue here is, well, in the first instance, did he address it at all? Second instance, if he addressed it, he addressed it to the wrong court. And in Houston v. Lack, there is some indication that that prisoner addressed it to the Tennessee Supreme Court. And in fact, it was received by the proper court. That seems to go to some issue as to the question of the proper addressing of the mailing. It seems that Judge Giaz has some concern about that. Yes, Judge Wynn. And because of the transfer statute, 28 U.S.C. 1631, it's irrelevant that Mr. McNeil used the wrong federal district court. This court held . . . Well, maybe you're not understanding my question or Judge Wynn's question. We're suggesting or at least questioning whether the envelope was addressed correctly at all. It might have been addressed to the district court. It might have used an improper P.O. box. It might have been addressed to the state court. We don't know. You're saying that the averment by the petitioner is sufficient for purposes of this appeal. But I'm wondering whether or not it might be more appropriate to send the case back to determine whether or not the correspondence was, in fact, properly addressed. Yes, Judge Giaz. If this court does choose to send it back for an evidentiary hearing, it would be the burden of the government moving forward to show that Mr. McNeil, in fact, did send it to an inappropriate address. Or do you have an argument that because the government hasn't presented any evidence to the contrary that we should assume that it was properly addressed? Well, Judge Giaz, for the purpose of this appeal, we should just assume that because of Mr. McNeil's averment. However, because the government also has all the access to the evidence, it is the burden of the governments moving forward if they do choose to address that in the lower court moving forward. And if, in fact, the paper was improperly addressed, it was sent to a state court or misaddressed, what's the result? Your Honor, if it does turn out that Mr. McNeil improperly addressed it or sent it to a state court, we do not contend that the Prison Mailbox Rule applies. And the reason that is is because Section 1631, the transfer statute, is the outer limits to the applicability of the Prison Mailbox Rule. 1631 shows that Congress enacted a statute to aid civil litigants confused about the proper form for review. And in this case, Mr. McNeil sent his motion to a federal district court. It just happened to be the wrong one. But under this court's precedent in United States v. Shaw, as well as the Seventh Circuit where the Southern District of Indiana sits, their case, Phillips v. Sider, it's presumptively in the interest of justice, the discretionary matter of Section 1631, to transfer an ADEPA statute, Section 2255 motion under ADEPA because of ADEPA's short statute of limitations and the fact that pro se litigants are adept to miss deadlines. So because of that, had Mr. McNeil's motion been received in the Southern District of Indiana, which you're right, Judge Diaz, we're not sure if it was, but in the event it was, it would have been transferred to the Eastern District of North Carolina, and a date-back function of Section 1631 would have made that the Eastern District of North Carolina use the exact same date that the Southern District of Indiana would have deemed Mr. McNeil's motion filed. So what you seem to suggest is that there's really no reason why a prisoner has to address his or even seek the proper court to send any pleading to, just send it to any federal court, and then that court would have the obligation to transfer it to the proper court? Well, Judge, if I could answer in two parts. First, because of the discretionary function of 1631 and the fact that it all does hinge on the interest of justice, if the district court had any reason to believe that the prisoner was doing this in bad faith, it would not be in the interest of justice to transfer. Didn't he say that he thought that the district court said, well, he was relying on some other inmate's advice, and that seemed to have kind of not settled very well with the district court, that a pro se defendant would do that? Yes, Judge, when Judge Fox did have an issue that he was relying on the advice of a jailhouse lawyer. Was that not enough for him to exercise his discretion that, well, that's a problem? Well, Judge, another thing that the district court mentioned was that it appears that the front page of Mr. McNeil's habeas motion of his Matthew Bender and Company form that was given to him by the jailhouse attorney, I'm sorry, the actual attorney at the jail, was missing its front page of instruction. So Mr. McNeil had no actual idea where he was supposed to send this, and it's not like Mr. McNeil sent his motion to a random federal court. He sent it to the federal court that has jurisdiction over the Terre Haute penitentiary in which he is housed. So Mr. McNeil did make a mistake of law, but it was a good-faith mistake, and under this court's holding and... How do we narrow it? How do we narrow a holding so it doesn't have the effect I said earlier, that is, that a prisoner who simply throws something out in the mail could send it to the soup kitchen, for instance, and it seems like, and that might be a little far-fetched, but send it to another court. That court would not have the obligation then to transfer it. Do we narrow it here by saying that he sent it to a court that was within the jurisdiction of the prison? No, Judge Wynn, because Congress has made this seemingly what you're suggesting, an arbitrary line between what courts apply and which courts don't, Congress has said that every court defined under 28 U.S.C. 610, which includes every federal district court, bankruptcy courts, things like that, that civil litigants should have their motions transferred if it's in the interest of justice, and that the date with which the first court received that motion is the date that the proper court will use for filing purposes. So Congress has already made that line for this court by the operation of 28 U.S.C. 610. Narrow this case for me. Tell me how do we narrow our holding so that it doesn't have an expansive reading of it. Judge Wynn, this court's holding would essentially say that because Mr. McNeil addressed his motion to a federal district court and because he did this in good faith, you know, it was a good faith mistake as opposed to some form of abusive action on his part. Is that the basis for the good faith determination? The fact that he made a mistake of law, but it was not like he was trying to extend his time. He did not do this to . . . He was relying on another prisoner's advice. Yes, Judge Wynn, he was. Good faith? Well, in this case it was. Mr. McNeil is a pro se litigant with very little knowledge of the court proceedings, and he was doing what he thought was right. And many courts, and this goes to the equity side, but many courts have looked at the subjective knowledge when looking at if a prisoner is acting in good faith. And here . . . Tell me something else that would establish his good faith other than relying on that prisoner's advice. Well, another thing is that he sent his motion 29 days before the statute of limitations ran. He was diligently pursuing his rights, and he did not act . . . He did not think he needed to do anything else beyond that. So the Prison Mailbox Rule, the way that that operates is it shows that because he sent his motion to a federal district court that would have had the obligation to transfer it, and under this court's precedent, United States v. Shaw, the Southern District of Indiana would have transferred Mr. McNeil's motion. The real question is what happens when that court presumptively does not receive his motion. And that's where the Prison Mailbox Rule . . . That's what the court in Houston v. Lex said the Prison Mailbox Rule was designed to prevent. You can't have a prisoner's constitutional rights hinge on the operation of the Postal Service or a mailroom employee who may have every inclination or every reason to hold Mr. McNeil's motion. I'm sorry. Go ahead, Judge. So the equities are, as I understand your argument, are irrelevant so long as the mail, in this case, was addressed to a federal district court even if the incorrect court. That's the end of the matter. Yes, Judge, it is. Because of the Prison Mailbox Rule, his motion was deemed filed the moment he deposited it, and the way that 28 U.S.C. 1631 works is as soon as a civil matter is filed, it is in the interest of justice, and in this context, presumptively in the interest of justice, for any federal court to transfer that motion to the appropriate federal district court. Tell us about the equitable tolling. The judges may want to come back on the Prison Mailbox Rule, but isn't there an equitable tolling? Yes, Judge. Mr. McNeil, if the Prison Mailbox Rule does not apply, Mr. McNeil is still entitled to have his motion read on the merits because of the doctrine of equitable tolling. Equitable tolling applies when a prisoner diligently pursues the vindication of his rights, in this case, a constitutional right, and in extraordinary circumstances, stands in the way of his filing. So if we go to the first prong of this test, Mr. McNeil diligently pursuing the vindication of his rights, Mr. McNeil sent his motion 29 days before the statute of limitations ran, and that is established. He received no correspondence from the court, and at that point, he thought he had done everything he needed to do to file. And when we're looking at this, we're looking at reasonable diligence. The Supreme Court made clear in Holland v. Florida, this isn't maximum feasible diligence, this is reasonable diligence. And this includes the totality of the circumstances, including the subjective knowledge and expectations of the prisoner. So here, Mr. McNeil sent his motion on May 23rd, did not hear anything. Then again, on August 16th, he sent a letter to the Southern District of Indiana inquiring about the status of his motion. He did not hear anything. Then again, on October 31st, he sent a second letter inquiring about the status of his motion. And it's at this point that he realized that he should have sent his motion to the Eastern District of North Carolina, and that the Southern District of Indiana did not have his motion. Immediately, on November 5th, he sent the Eastern District of North Carolina a letter asking if his motion had been transferred to that court. And then without hearing a response from that court, he prepared pro se a motion to accept his habeas motion as timely filed, as well as sending a copy of his original motion that he originally had sent to the Southern District of Indiana, to the Eastern District of North Carolina. So all these things are how Mr. McNeil showed that he was not sleeping on his rights. He was diligently pursuing the vindication of his rights. And if you look at the second letter Mr. McNeil sent to the Southern District of Indiana, he was concerned about being annoying to the court, or he was not sure how long it would take, so he thought it was reasonable that five months had gone by and he had not heard anything. He was just interested in what was happening. Going to the second prong of equitable tolling, an extraordinary circumstance standing beyond Mr. McNeil's control, because of the posture of this case and the fact that it's established Mr. McNeil did, in fact, deposit his motion affixed with proper postage on May 23rd, there's a finite number of things that could have happened to Mr. McNeil's motion. Either the prison mailroom lost it, mishandled it, either the post service lost it or mishandled it, or in the event it did get to the Southern District of Indiana, it got lost before it was actually docketed. In any of those cases, it's a government actor that has done something that they should not have. They did not execute their legal duty, and that is the reason Mr. McNeil's motion was not filed. We know that if the Southern District of Indiana had received Mr. McNeil's motion, it would have been transferred, the Eastern District of North Carolina would have deemed it filed on May 23rd, and we would not be here today. The government is concerned about a ruling in this case that would open the floodgates to, after the fact, exportations by prisoners that we mailed it, it just disappeared. And so how do we, if we agree with you, draft an opinion that would prevent that kind of flooding of the court system? Yes, Judge, it is. It's actually our contention there's no floodgate issue at all. As the Supreme Court in Houston mentioned, it's a relatively straightforward inquiry for the government to check mail logs. They can, as the Ninth Circuit said, Judge Kuczynski, the government can go check the prisoner's account and see if postage was taken out of his account. There's a plethora of ways that the government can see if the prisoner actually mailed his motion the day that he said he did. And in a normal case, when the district court does not rule sua sponte, the government could contend this, or could contest this and say, no, in fact, he did not send his motion when he said he did. He sent it after the motion. Therefore, the prison mailbox rule doesn't apply or equitable tolling does not apply. All of this is contingent on Mr. McNeil having sent his motion before his statute of limitations ran. So because he sent it 29 days before his statute of limitations expired, until the government can prove otherwise, there is no floodgate issue because Mr. McNeil was still within his statute of limitations. It's the fact that the government, either the mailroom or the post office, lost his motion. That's the issue. And that's exactly the issue that both the prison mailroom is supposed to avoid, but in the event that it doesn't apply here, then equitable tolling surely does. Well, you've got a situation here in which your client has relied on incorrect advice of an inmate. He's going pro se. And here we are on the eve of the anniversary of the Gideon v. Wainwright case. Are there any implications here constitutionally in terms of this outcome? It sounds like you're trying to fashion out a remedy, an equitable remedy, on the one hand. And on the other hand, even with the mailbox rule, is to breathe some life into a rule that perhaps doesn't direct this issue directly. But you say it does. Are there implications for us to consider in terms of the counsel rights here? Well, Judge Winn, Mr. McNeil is a pro se litigant. And despite the fact he took advice from anyone in the prison, he still is pro se, and he did not have legal advice. So it's unclear to me how it would be important if he did take advice from. Your Honor, I see I've run out of time. Could I finish answering? I don't see how it would implicate anything as far as prisoners' rights to counsel when he's relying on the advice of just someone else that's also a prisoner, and he still is pro se. Thank you. Thank you, Your Honor. Thank you, counsel. Ms. Shah? Yes, Your Honor. Yes, go ahead. May it please the court. Good morning. My name is Shalika Shah, and I represent the Respondent, Apple Lee, of the United States. Despite what the petitioner has presented in his appellate brief, in the reply brief, and before the court today, the petitioner failed to raise many of these claims before the district court. The petitioner provided the district court a sworn affidavit alleging only the following facts. One, on May 23rd, he deposited his section 2255 petition with the prison mailroom. Two, that that petition was addressed to the Southern District of Indiana because he mistakenly relied on the advice of a fellow inmate. Contrary to what the petitioner alleges today, the petitioner in his affidavit did not provide any factual, did not allege any facts that he did correctly address that, or that he did have the proper postage, or that it was not an empty envelope. He didn't provide the facts to take the burden. Wouldn't that be almost like the children's game of Simon Says? You know, you take two steps forward, you take two steps up, but Simon didn't say so. Isn't it implicit that when he said he addressed it to the Indiana court, and he put it in the mailroom, that there's postage on it, and there was something in it to the court? Yes, Your Honor, except... Isn't that a fair and reasonable inference to be drawn from that affidavit? Well, Your Honor, based on the fact that the petitioner bears the burden to show that his motion was timely filed, in order to go through the different scenarios that they suggest today, the three different scenarios that puts all of the blame on a third-party actor, the petitioner has alleged enough to take the risk of mistake off of him, and he has failed to do so. He's failed to allege sufficient facts before the district court to put that blame on any third-party actor. It seemed like the district court wasn't concerned about that he didn't mention postage or the fact that something was in there. It was just because he took the advice of a fellow, which I can't understand why there's so much consternation about that. That's the available counsel you have. I think Judge Wynn asked the question about counsel. This is civil matters. You don't have a right to counsel, so so-called jailhouse lawyers are most available help there. What difference does that make in terms of what his affidavit should say? Well, Your Honor, as to the first part of what you mentioned, I believe the district court did take issue with the fact that the petitioner did not correctly address that envelope. While it didn't make a conclusion that unquestionably it was not correctly addressed, it did raise the issue that for the prison mailbox rule to apply, there's a presumption that it is correctly addressed to the proper recipient. And Judge Fox concluded that it unquestionably was not. And we can all agree that the proper recipient here was not the Southern District of Indiana, but was the Eastern District of North Carolina. In addition, the petitioner did not allege sufficient facts to conclude that it was, in fact, correctly addressed. Correctly addressed to who? To the Southern District of Indiana. I thought I just heard you say that the court ruled against the petitioner because it was not properly addressed to the Eastern District of North Carolina. Well, Your Honor, I believe that issue was a little bit unclear in the order that I read it. He said that in order for the prison mailbox rule to apply, that it had to be correctly addressed to the proper recipient, and unquestionably was not. He did note that it was addressed to the Southern District of Indiana, but then also went on to note that it was never received by the Southern District of Indiana or not received by anyone for that matter, which raises the question as to whether or not it was correctly addressed. Judge Gregory, going on to your second question. Well, let me ask you this. Shouldn't the government have presented some evidence if, in fact, there was some question about whether or not the envelope was properly addressed? Wouldn't that evidence be in the custody of the government and available to the government to present? Your Honor, I believe that that evidence would be most readily available to the petitioner. He addressed that envelope. He had the opportunity to provide a copy of that envelope. Well, he wasn't as specific as you might have liked him to be, but Judge Gregory points out he did say that he sent it to the United States District Court for the Southern District of Indiana, and if the government had some question about that, aren't there records within the government's possession that would refute that if, in fact, it was not correct? Well, Judge Diaz, going back to the fact that the burden was on the petitioner after he filed, he made one filing period with the Eastern District of North Carolina. That filing was five months late. The burden was on him to show the court why his petition should have been considered timely, and therefore it was not the government's obligation to search and dig and find that evidence for him. Now, that same evidence that you're suggesting would have been available to the government was also readily available to the petitioner. He can get that information through administrative remedies with the Bureau of Prisons and get documentation as to what exactly happened to his mailing. He didn't provide that documentation to the court or didn't even allege any facts regarding that to raise in the mind of the district court a question that would cause the district court to want to have an evidentiary hearing. He merely provided these threadbare allegations, not raising those questions in the court. In his affidavit, he alleges two major . . . Do you object to sending this case back to just clear all this up and see exactly what happened? Yes, Your Honor. Why? I do object to that because the petitioner had the burden, and he did not meet his burden, and the district court, in light of what was in his affidavit, in his affidavit, which is on the Joint Appendix, page 102, and it says very clearly, I made a mistake. I relied on the advice of a jailhouse attorney. I sent it to the Southern District of Indiana. That was not the right point. The advice of the jailhouse attorney was just that, that he sent it to the wrong court, but under our case law and under the relevant law, if in fact that did happen and if in fact that petition was addressed to the wrong federal district court, he has a remedy because it was the duty of that district court to then forward that petition to the proper court. So how do you win under that analysis? Had the petition been received by the Southern District of Indiana, we don't argue then in that case, yes, the Southern District of India may have transferred it to North Carolina, and then the North Carolina filing may have gotten the benefit of the prison mailbox rule, but we don't have those facts before us today. Are you saying that if the petition had been properly addressed, well, improperly addressed to the wrong court, to the federal court in Indiana, but with the correct address, and it had not been received, the petitioner loses? Yes, I think the petitioner loses on the argument of the benefit. That's not within his control. He has no control over the Postal Service and how they deliver mail or not. If, in fact, the petition was properly addressed but not delivered through no fault of the petitioner, how does he lose? Well, I think the petitioner loses under the prison mailbox rule, to clarify. One, if we go to the Supreme Court's guidance in Houston v. Lack, the Supreme Court stated in the context of a notice of appeal that the court stated that there is no dispute that the notice must be directed to the clerk of the district court, otherwise delivery would not constitute a filing. That's not true in the Houston case. There was some indication that notice was directed to the Tennessee Supreme Court. Judge Winn, from my reading of the Houston v. Lack case, I understood that the petitioner, or the plaintiff in that case, when he filed his notice of appeal, he directed it to the district court of the proper court, but unfortunately had a typo and included the wrong P.O. box number, but still directed his filing to the correct court. The P.O. box number for the Tennessee Supreme Court? Yes, Your Honor. So the fact that it did not go there would have been fatal to him because it didn't actually go there. It went somewhere else. I think in Houston v. Lack, if that mistake of putting the wrong P.O. box number had led it to be delivered to the Tennessee Supreme Court and never been filed, then I think he would not have gotten the benefit of the prison mailbox rule. As petitioner would suggest, that doesn't leave him completely in the lurch. They've asserted another argument for equitable tolling. The fact that the prisoner officials, or either the mail, chose not to send the mail where it was supposed to go, which was to the Tennessee Supreme Court, that prisoner got the benefit of something the mail folks did or the prison folks did, when in fact he sent it to the wrong place? Well, Your Honor, in that case... And it would be different if in fact they had mailed it to where he sent it to? If they had mailed it to where he had sent it to and it had been received and filed by the court. I think this prison mailbox rule hinges on it actually getting to a court and being filed somewhere. And the reason for that is without that requirement... So if it had reached the Tennessee Supreme Court, been filed, then transferred, that's okay? I think if at that point it had been transferred, then they would have a stronger argument to get the benefit of the prison mailbox rule. But I think in the situation where it's not received by anyone nor filed anywhere, then allowing the prison mailbox rule to apply would open it up to a whole host of situations that would provide no certainty for the courts of what documents were filed, what cases existed, and would allow petitioners to get the benefit of rules that don't really apply to them. Does the prison official keep a log of where prisoners' mail go? It seems like the cases I read look like they're pretty invasive on what's being mailed out and what's being mailed in. Is there any log that would... It seems like there ought to be a practical way to figure out where he sent his mail to that day. Your Honor, I do have to recognize that my knowledge of the Bureau of Prison Policies is somewhat limited, but to the extent of my knowledge, I understand they do keep a log of what is mailed out and what comes in. I don't know... That would help because, see, that Houston v. Wack case, that was a 5-4 decision, but it was a pretty tough decision. And that dissent set out a lot of the stuff you're seeing right now, but that's not the majority opinion. And essentially what was held in that case is that this guy's in prison, and the only thing he can do is give it to the prison officials. And if they don't do what they're supposed to do or get it in their way, then you can't hold them responsible. It's effective at the time of filing. And so the question that seems like our certificate of appealability is saying, what happens if you send it to the wrong court? And what happens as an effect of that? I think where it's addressed to the wrong court, and I don't think they automatically get the benefit of the prison mailbox rule. I think in the situation where that court receives that document, files that document, and transfers it, they would get the benefit of the prison mailbox rule. Have you looked at the merits of this motion? I know that's kind of the merits of the motion here. I've looked at the motion, yes, Your Honor. Wouldn't it have just been easier just to deal with the merits of this motion instead of going through all this? Well, Your Honor, I don't think the district court saw any need to get to the merits of the motion because based on what the petitioner alleged, there was no question that his petition was untimely, five months late, and that it did not warrant any actual tolling or application of the prison mailbox rule. I'm not just talking about economy, interest of time, interest of justice, fairness, and all of that. Wouldn't it have just been easier just to take a look and see what he's got here, make a decision? That's a good shot you wouldn't be standing in front of me right now arguing this. I mean, what's... I don't get it. I mean, usually when you get a case like this, there must be something to his motion. The underlying is the reason now you want to rely on a procedural bar because you're saying if you get the merits of this thing, this guy's probably going to win this thing. And I don't know if that's the case or not. That's why I asked, had you looked at this, and sometimes you boil it down to you can fight with all you might to keep something out, and then you wonder, well, what am I doing all this for? Why don't I just take a look at it? He says, okay, go ahead and make your little motion here, and let's see what we're going to say. And then make a determination. Had you looked at it to the extent to see that this looks like it is going to be a winner for the other side or that it's going to be a winner for your side if you did get to the merits? Your Honor, from my looking at it and assessing the 2255 petition, I don't see any merit to that petition. And I don't think that he would succeed at the district court level. And you made no effort before the district court to say, you know, Judge, I know he may have waited, but just as an alternative, why don't you take a look at this motion here and make a ruling as to whether or not you think there's a merit, even if it was determined that the prison mail box rule applies? Well, Judge Wynn, I think that would completely do away with any significance of the AEDPA. It would save some time with us is what I'm trying to say. I mean, bringing it up here, it seems like to me it's just practical. Everybody's sitting in the courtroom. Why don't you just take a look at it, Your Honor, and then, you know, let's do a little smarter. It doesn't take a long time to hear it. He makes a determination right then. Then you've got that basis there that says on the one hand he's barred from bringing it, but even if he isn't, I've looked at it, and there's no merit to it. Well, Your Honor, I don't... Was that even considered is what I'm asking? And I'm not Judge Fox, so I don't know that he even considered that, and we did not communicate with the judge regarding this case. I'm not dealing with Judge Fox. I'm dealing with the U.S. Attorney's Office in terms of the procedure and the policy there, which would be, I mean, they just, I don't know. I guess I'm thinking more practical on it. Sometimes you want to fight battles and write legal briefs and you argue a great point, and then once you get up here and you make the great point, if the other side wins, now you go back, you actually have a hearing, end of the day, who knows how it's going to come out, but it just seems like everybody was in the court and could have just done this with all this back and forth. It takes a lot of money and time, you know. Right, and Your Honor, I can see that that could be a waste of time, but in this context, I think allowing... It's time to suggest for a future way to handle these things, wouldn't you think, using a little practical basis of it. If it can be handled in that... I mean, I can appreciate it if you got to the merits, oh, this is going to take four or five days, or it's a lot of stuff involved here and that's just too much and it's easier just to do it this way because he just doesn't meet it. I can see that. But if a petitioner files just one day late, one week late, yes, our practice is just respond on the merits and let that go forward. In the interest of the economy that you're referring to. But to allow... You're taking up too much of your time with that question. Judge Rager may have something to talk about. Just to get this, because we do have to decide this and write an opinion. I just want to make sure that the fact that he relied on a jailhouse lawyer, that's really not an issue here, right? Your Honor, I think that's a huge issue here. That can't be an issue. Who you rely on alone can't be the issue, is it? Well, I think that the Fourth Circuit, Your Honors, have held twice that the reliance on the misadvice of an attorney does not amount to an extraordinary circumstance. Okay, equitable tolling. Oh, yes. Yes, Your Honor. But Houston v. Lack, that has nothing to do with it. You agree with that? Yes, Your Honor. All right, good. That's good because the district court's reliance on that, I can understand that. It has nothing to do with the mailbox rule. I want to understand. He sent it to the Southern District of Indiana, Federal District Court. That's undisputed. You agree with that? You agree with that? Your Honor, we— No, but you have to give me some yes or no now. We're onto the wire now. Yes, the petitioner alleges that he sent it to the Southern District of Indiana. And do you agree that that's undisputed? No, Your Honor, we do not agree that that's undisputed. Well, where is it disputed in the record? Your Honor, we just don't— Where is it disputed in the record? Your Honor, it is not disputed. Okay. Then it's undisputed. That's how we do it. All right. Now, he said he sent it to the right address. Is that undisputed? Your Honor, I was unable to locate where he says he sent it to the right address. So we do dispute that. So you dispute that. Yes. But there's nothing in the record that you put forward that's contrary, correct? Right. We have not put anything contrary. However, he did not allege that, and therefore we dispute it. Okay. All right. So if we assume that he sent it there to the correct address, we're not talking about correct court, correct address, does he get the benefit of the mailbox rule? No, Your Honor. Why not? Because it was never received by the Southern District of Indiana. Oh, but then that can't be the case, can it? Because then that would undermine—the whole idea is not the destination, it's the delivery there that's the filing. Then you make him the postal service guarantee then, right? Well, no, Your Honor. I believe Houston v. Lack and the prison mailbox rule deals with delay, delay in filing. When a document is deposited with a prison mail room before the expiration of the statute of limitations, but only filed after because of either delay with the prison mail room, delay with the postal service, or delay with the court, then the prisoner gets the benefit of a constructive filing date. And that constructive date is what date? That would be the date that he deposited it with the prison mail room. What difference does it make that the postal service didn't deliver it? Because to allow the prison mailbox rule to apply in that circumstance would allow petitioners to deem documents filed merely because they put them in the mail, even if those documents never reached the court. But they have to because—we must be ships in the night. The purpose of Houston v. Lack is to try to put the prisoner at the same level playing field of any person who's not incarcerated. If you're not incarcerated, you have the option to go to the court and hand it to them, correct? Yes, Your Honor. They can't do that. So they have to rely on what? Mail. And they have to rely on what? A prison official to be their depositor, correct? Yes, Your Honor. But isn't that the way to put them on equal? Once they do that, that puts them on equal footing with a person who can hand it there. But, Your Honor, I think that goes back to what Judge Wynn brought up with the petitioner is that every time a document is mailed to any federal court, then that document is deemed filed and timely filed with whatever the proper form would be. But you seem to be suggesting that even if he had properly addressed it to the correct court, the Eastern District of North Carolina, and it never got there, that he still doesn't get the benefit of the prison mailbox rule. That can't be right. Well, Your Honor, I do submit that that does not get the benefit of the prison mailbox rule, but I do believe that in that case the prisoner could turn to equitable tolling and have a much stronger argument. But, unfortunately, those are not the cases. Those are not the facts before us. I think equitable tolling picks up where the prison mailbox leaves off. The reason the prison mailbox rule has to leave off in that regard is because at that point, if we were to allow any document deposited in the prison mail room to automatically be deemed filed, that document doesn't reach anywhere. I think it just opens it up for prisoners to claim that they have sent documents off that have been lost in the mail when they actually didn't file them until way past their statute of limitations expires. Let me ask one question to follow up on Judge Greger's question, which I think presents an interesting perspective, and that is that if we are to look at it as for the prisoner to have the same rights as though he's not incarcerated, he could walk up to the clerk's office and actually file it. Why would we not then read the mailbox as being, once he presents it to the prison officials, it's as though he has walked up to, and your time's up, but I want you to answer this, walked up to the Southern District of Indiana's district court and handed it to them. Of course, you know, had that happened, there's a good shot they would have told them this doesn't belong here or done something at that point. So why wouldn't we not read it in that light? Well, Your Honor, I think that it takes the prison mailbox rule beyond its limitations to read it in that context to say that if a petitioner sends it to the wrong court, they should get the benefit of the rule because if he had walked it to that court, the court would have told him. Well, if the effect of the mailbox rule is to put him in the same position as though he's not out, he hands it to the prison officials, and that has the effect of walking into the Southern District of Indiana and handing it to the clerk, is that what we can at least accept the mailbox rule saying here and you say that's not enough? And, Your Honor, I have permission to answer the question. You can answer Judge Wynn's question. Yes. Judge Wynn, I spent that if he were to take it to the Southern District of Indiana and that court then told him this is the wrong court, then he still wouldn't have made a filing even though it had been received by the court. He would then have to take it and have it filed with the right court. I don't think that the petitioner in this case is put in any different circumstance than someone else who takes it to the wrong court. It doesn't result in any filing. Thank you, Your Honors. In closing, we ask that you uphold the decision of the District Court to deny the petitioner's 2255 petition. Thank you so much. Professor Coleman, Mr. Barr. Mr. Barr, go ahead. There's some time reserved. May it please the Court? Your Honors, I'd just like to address two things that the government brought up. First, while we still contend that Mr. McNeil's affidavit on page 102 of the record is sufficient to satisfy his burden under Rule 3D in Section 1746, if the court does turn to page 89 and 90 of the record, those are the letters Mr. McNeil sent to the Southern District of Indiana, one of which was responded to all of the time. He had the exact same address to the Southern District of Indiana, so that may alleviate some of the concerns he used the improper address. Going on to the second part, the government seems to be saying, and Judge Diaz mentioned this, that the prison bailout rule only applies when it's actually received by the court, even if the proper address is used. That just cannot be right. Houston explicitly says that the jailer is in effect the clerk of court when we're talking about a prisoner because of his confinement, because of the fact he's required to rely on these people, and as Judge Greger mentioned, because he can't walk to the court himself and deliver this. Hinging the prison mailbox rule's applicability on the actual receipt of the document completely makes the prison mailbox rule a dead letter. It's not real anymore if that's what's happening here. So because Houston is very clear, because Rule 3 is very clear, that the moment of filing of a pro se litigant's papers is the moment he deposits them at the prison mailbox rule, we ask this court to reverse the order of the district court and remand Mr. McNeil's motion for further proceedings. And that doesn't matter no matter what court he sends it to? From your perspective, that jailer's acting as a clerk of which court? It says a clerk of the district court within the meaning of Rule 37 because they're analogizing to a previous Supreme Court, a Supreme Court rule and a Supreme Court decision. But the way that it's a... Houston seems to be taking a position that it's going to the right court, that if you do what they're supposed to, it's going to go to the right court, and that the jailer is, in delaying the mailing of it, has effectively taken that away from him. So you've got this mailbox rule that allows it to get to the right court. The question becomes, what if you come up and he addressed this to the district court of Hawaii? And does the jailer also be the clerk for the district court of Hawaii? And if he is, then how does that connect him to North Carolina's district court? Yes, Judge Wynne, if I could answer in two parts. First, as you mentioned just now, if he's the clerk of court for whichever court it's addressed to, even if that's the way that the prison mailbox rule applies because of the transfer statute,  and because of the transfer statute, it would have been transferred to the Eastern District of North Carolina anyway, out of the interest of justice. So even if he is the clerk of court for the court to which the papers are addressed, Mr. McNeil still is entitled to the benefit of the prison mailbox rule. And second, even in Houston itself, it looks like the petitioner there mailed his motion to the improper court, and only by a matter of luck did it get to the appropriate court. So Houston does not seem to hinge on using the proper address. And in fact, the court even says this is not an issue of destination, this is an issue of timing, and they're very clear about that. All Houston goes to stand for is that filing happens at the moment that the legal papers are deposited with the prison authorities. And in this case, Mr. McNeil deposited his motion to a place that has an obligation and a duty to process his motion. He didn't send it to his mother or his friend. He sent it to a federal district court that by law is going to transfer his motion unless they have a reason to think it would not be in the interest of justice. But here it is. I mean, it's presumptively in the interest of justice under the Seventh Circuit's holding in Phillips v. Sider. And in this court's ruling in United States v. Shaw, this court also suggests it's presumptively in the interest of justice. So because of that, we ask this court to reverse the order of the district court and remand Mr. McNeil's motion for further proceedings. Thank you, Your Honors. Mr. Coleman, Mr. Bob, we note that you're a court opponent. We thank you so much for your service. Our court couldn't do our work without your fine service, and we thank you very much. And Ms. Shaw, thank you for ably representing the United States here today. We're going to come down and recounsel and then proceed to our next case.
judges: Roger L. Gregory, James A. Wynn Jr., Albert Diaz